ROSEN AUTO LEASING, INC., A NEBRASKA CORPORATION,
APPELLANT, V. MICHAEL A. JORDAN, APPELLEE.

720 N.W.2d 911

Filed September 5, 2006.    No. A-05-477.

John T. Rogers for appellant.

No appearance for appellee.

IRWIN, SIEVERS, and CASSEL, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Rosen Auto Leasing, Inc. (Rosen), has attempted to prosecute this appeal from an order of the county court for Douglas County, Nebraska, denying Rosen's request of the county court to issue a capias for the arrest of Michael A. Jordan. Rosen appealed to the district court, which affirmed the county court's denial of Rosen's request. Since the docketing of the case in this court, the case has been under jurisdictional review because the original order of the county court was not properly entered by the clerk of the county court—there was no file stamp placed upon the order. Despite Rosen's attempts to remedy the jurisdictional default, we now conclude that we are without jurisdiction, and we dismiss this appeal.

Pursuant to this court's authority under Neb. Ct. R. of Prac. 11B(1) (rev. 2005), this case was ordered submitted without oral argument. We write a published opinion in this case to discuss the jurisdictional problems contained herein and to discuss this case's variation of the concept of "springing" jurisdiction previously discussed in *State v. Brown*, 12 Neb. App. 940, 687

N.W.2d 203 (2004). Additionally, we feel compelled to once again emphasize the vital importance of lower courts, clerks of court, counsel, and litigants taking the most basic steps to ensure compliance with Neb. Rev. Stat. § 25-1301 (Cum. Supp. 2004). As we iterated in *State v. Brown*, 12 Neb. App. at 940, 687 N.W.2d at 205, "[o]ur hope is that our opinion will provide guidance for the bench and bar, eliminate unnecessary procedural delays for litigants, and make the work of the appellate courts somewhat simpler."

## II. BACKGROUND

On November 27, 2001, Rosen filed a petition in the county court. In the petition, Rosen sought a judgment against Jordan for default under the terms of a lease agreement.

On May 15, 2002, Rosen filed a motion seeking a default judgment because Jordan "failed to timely answer, appear or otherwise plead." On May 16, the county court entered a default judgment in favor of Rosen in the amount of $3,360.11 plus interest and costs. On November 13, Rosen filed a praecipe for execution of the default judgment, but the sheriff was "unable to locate [Jordan] in Douglas County" and Jordan had "no goods, chattels, lands and tenements on which to levy."

On August 26, 2003, Rosen filed a motion seeking an order in aid of execution of the default judgment. Rosen asked the county court to issue an order "requiring [Jordan] to appear and answer questions concerning property of [Jordan]." On August 27, the county court signed an order demanding that Jordan appear and warning that Jordan's failure to so appear could result in a warrant being issued for his arrest. A civil process server was unable to serve the order, however, because Jordan could not be located "after diligent search and inquiry."

On January 20, 2004, Rosen filed another motion seeking an order in aid of execution of the default judgment and asking the county court to issue an order "requiring [Jordan] to appear and answer questions concerning property of [Jordan]." On January 21, the county court signed an order demanding that Jordan appear and again warning that Jordan's failure to so appear could result in a warrant being issued for his arrest. A process server was again unable to serve the order because Jordan could not be located.

On May 6, 2004, Rosen filed another motion seeking an order in aid of execution of the default judgment and asking the county court to issue an order for Jordan's appearance. On May 7, the county court signed an order demanding that Jordan appear and again warning that Jordan's failure to so appear could result in a warrant being issued for his arrest. On May 7, the county court also signed an order authorizing service "by leaving the process at [Jordan's] usual place of residence and mailing a copy by first class mail to [Jordan's] last known address." A process server left the process at Jordan's "usual place of residence," and Rosen served a copy by first-class mail.

A June 29, 2004, county court journal entry indicates the following:

> Plaintiff appeared
> Defendant failed to appear. No Personal Service.
> ~~Order Signed  Pl granted leave to issue Capias. Bond set at~~
> ~~$5,000 10%.~~
>
> ERA

This journal entry does not bear any file stamp. It appears that the county court initially intended to journal that Rosen be granted leave to issue an arrest warrant for Jordan's arrest and to set a bond amount for the arrest warrant but then decided not to issue such an order because Jordan had not been personally served with the May 7 order in aid of execution. Nonetheless, because the journal entry does not bear a file stamp, it did not constitute a properly entered order pursuant to § 25-1301.

On July 28, 2004, Rosen filed a notice of appeal in the county court indicating Rosen's intention to appeal "from the order entered . . . on June 29, 2004 wherein the [county c]ourt denied [Rosen's] request for Capias to [i]ssue against [Jordan]." On September 13, Rosen filed a "Statement of Errors" in the district court challenging the county court's failure to issue an arrest warrant without personally serving Jordan. On March 9, 2005, the district court entered an order affirming the county court's "decision."

On April 7, 2005, Rosen filed a notice of appeal in the district court indicating Rosen's intention to appeal the district court's affirmance of "the decision of the Douglas County Court denying [Rosen's] request for Capias to [i]ssue against [Jordan]." On

July 7, this court issued an order to show cause. In the order, this court noted the lack of a "valid signed and file-stamped judgment denying a motion for capias" by the county court. Rosen requested an extension of time and leave of court to cure the jurisdictional defect, in which motion Rosen requested leave of court to obtain a valid judgment in the county court, a modified order in the district court, and a supplemental transcript in this court.

On August 17, 2005, the county court issued an order specifically denying Rosen's request for capias. The county court specifically found that the request was denied "solely on the fact that [Jordan] was not personally served with notice" of the county court's order in aid of execution. This order of the county court was properly signed by the county court judge and was file stamped by the clerk of the county court.

On August 24, 2005, Rosen filed a motion in the district court seeking to modify the district court's March 9 order of affirmance. Rosen requested the district court "to acknowledge the Court's acquisition of full jurisdiction in this appeal and for such other and further relief as is just and equitable." On September 1, the district court entered an order modifying the March 9 order of affirmance. The district court recognized that it had "full and complete jurisdiction" and again affirmed the county court's denial of Rosen's request for issuance of capias.

On December 6, 2005, this court issued an order, sua sponte, directing the parties to file briefs addressing the following issue:

> Assuming that jurisdiction "sprung" to the district court upon the entry of judgment in the county court on August 17, 2005, see *State v. Brown*, 12 Neb. App. 940, 687 N.W.2d 203 (2004); Neb. Rev. Stat. § 25-2729(5) (Cum.Supp. 2004), does the district court's September 1 Order of affirmance confer jurisdiction upon the Court of Appeals, despite the fact that no new notice of appeal from the district court to the Court of Appeals was filed at any time after the jurisdiction of the district court was perfected on August 17?

Rosen filed its brief on appeal and specifically addressed the above issue. Jordan failed to file any brief on appeal.

### III. ASSIGNMENTS OF ERROR

Because we conclude that we are without jurisdiction to hear Rosen's appeal, we need not specifically address Rosen's assignments of error concerning the merits of this case.

### IV. ANALYSIS

#### 1. § 25-1301

■ We begin, as we did in *State v. Brown*, 12 Neb. App. 940, 687 N.W.2d 203 (2004), with the general proposition that for an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. Further, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Guardianship of Sophia M.*, 271 Neb. 133, 710 N.W.2d 312 (2006). Section 25-1301 sets forth two ministerial requirements for a final judgment: the rendition of a judgment and the entry thereof; both are prerequisites to appellate court jurisdiction.

■ The first ministerial requirement, found at § 25-1301(2), is rendition of a judgment, defined as the act of the court, or a judge thereof, "in making and signing a written notation of the relief granted or denied in an action." The second ministerial requirement, found at § 25-1301(3), is the entry of a judgment, defined as the act of the clerk of the court in placing the file stamp and date upon the judgment. In short, for a final judgment to exist to allow an appellate court to acquire jurisdiction, there must be an order that is both signed by the court as well as file stamped and dated by the clerk of the court. See, § 25-1301; *State v. Brown, supra.*

Since § 25-1301 became effective in August 1999, the appellate courts of this state have been required to deal with many appeals containing nonfinal judgments because the lower court's orders were missing the signature of the court or the file stamp and date of the clerk of the court, or both. *State v. Brown, supra.* See, e.g., *Macke v. Pierce*, 263 Neb. 868, 643 N.W.2d 673 (2002) (order missing file stamp); *Murray Constr. Servs. v. Meco-Henne Contracting*, 10 Neb. App. 316, 633 N.W.2d 915 (2001) (orders neither signed by judge nor file stamped by clerk); *State v. Wilcox*, 9 Neb. App. 933, 623 N.W.2d 329 (2001)

(order missing file stamp and date); *Mumin v. Hart*, 9 Neb. App. 404, 612 N.W.2d 261 (2000) (order not signed by judge). In addition, numerous cases have been disposed of by the appellate courts of this state by way of summary dismissal because of similar failings.

This court has previously indicated that "[i]t is our duty to dismiss appeals for lack of jurisdiction and to direct the trial court to expunge from its records actions or orders which are not valid." *Murray Constr. Servs. v. Meco-Henne Contracting*, 10 Neb. App. at 318, 633 N.W.2d at 916. "Trial courts must understand that any action purporting to be a judgment, decree, or final order must be rendered and entered to be valid, as provided in § 25-1301." 10 Neb. App. at 318, 633 N.W.2d at 916.

More than 6 years ago, the Nebraska Supreme Court cautioned the lower courts and the practicing bar of the importance of the legislative enactments which created the current version of § 25-1301, and the Supreme Court "urge[d] both the trial courts and the practicing bar to familiarize themselves with this new legislation as it w[ould] have a substantial impact on future appeals." *Hornig v. Martel Lift Systems*, 258 Neb. 764, 769, 606 N.W.2d 764, 769 (2000). Nonetheless, this court has noted that trial courts were slow to adopt procedures to ensure compliance with § 25-1301, and this court has encouraged lower courts to utilize meaningful file stamps to comply with § 25-1301 and specifically noted that former methods and procedures of rendering judgments are no longer effective without compliance with § 25-1301. See, *State v. Wilcox, supra*; *Mumin v. Hart, supra*.

Unfortunately, although the current version of § 25-1301 has now been in effect for nearly 7 years, too often trial courts and clerks of court continue to disregard the requirements of § 25-1301. Additionally, counsel and litigants continue to prosecute appeals without ensuring that the two simple ministerial steps of rendition of the judgment and entry thereof have been accomplished. We take this opportunity to once again remind trial courts, counsel, and litigants to ensure that a final judgment has been rendered by the court's signing of the order and has been entered by the court clerk's placing a date and file stamp on the order before an appeal is attempted. The failure to do so will continue to cause the appellate courts to "unnecessarily

wrestle with jurisdictional issues created by less than full compliance by court clerks and trial judges with the clear statutory requirements" and will result in continued dismissals for lack of jurisdiction. *State v. Wilcox*, 9 Neb. App. at 936, 623 N.W.2d at 331-32.

## 2. "SPRINGING" JURISDICTION

■ In *State v. Brown*, 12 Neb. App. 940, 687 N.W.2d 203 (2004), this court discussed the interaction between § 25-1301 and either Neb. Rev. Stat. § 25-1912(2) (Cum. Supp. 2004) (when trial court is district court) or Neb. Rev. Stat. § 25-2729(5) (Cum. Supp. 2004) (when trial court is county court) and the concepts of "potential" jurisdiction and "springing" jurisdiction. In *State v. Brown*, we noted that § 25-1912(2) provides:

> A notice of appeal or docket fee filed or deposited after the announcement of a decision or final order but before the entry of the judgment, decree, or final order shall be treated as filed or deposited after the entry of the judgment, decree, or final order and on the date of entry.

Accord § 25-2729(5). We also noted that "announcement" can come, inter alia, orally from the bench, from trial docket notes, from file-stamped but unsigned journal entries, or from signed but not file-stamped journal entries. *State v. Brown, supra.*

■ As we recognized in *State v. Brown*, § 25-1912(2) and § 25-2729(5) create what we called "potential" jurisdiction and "springing" jurisdiction. These jurisdictional situations occur when the trial court's order which is intended to finally dispose of the matter is announced but not rendered or not entered, but nonetheless a party files a notice of appeal. The effect of §§ 25-1912(2) and 25-2729(5) when the judgment is defective is that the appellate court "potentially" has jurisdiction because the lower court's judgment can be made final by rendition by the judge or entry by the clerk of the court, whichever is lacking, long after the notice of appeal is filed. In such a situation, the premature notice of appeal is treated as filed after the proper rendition and entry of the judgment and becomes effective when the defect is cured. Thus, the appellate court's "potential" jurisdiction over the appeal "springs" into full jurisdiction. This is true whether the appellate court is the district court sitting as an

intermediate appellate court, the Nebraska Court of Appeals, or the Nebraska Supreme Court.

In *State v. Brown*, we also recognized the unique problems that can occur when the district court acts as an intermediate appellate court. Specifically, we recognized that when the district court acts as an intermediate appellate court and the jurisdictional defect is caused at the county court level, the appeal in this court "cannot be saved by § 25-1912(2)." 12 Neb. App. at 942, 687 N.W.2d at 206.

The procedural background of *State v. Brown*, 12 Neb. App. 940, 687 N.W.2d 203 (2004), was in many ways substantially comparable to the procedural background of the case at bar. In *State v. Brown*, the county court sentenced the defendant, Scott A. Brown, on February 12, 2004, to a term of imprisonment. The court's sentencing order was rendered by being signed by the sentencing judge, but was not entered due to not being file stamped by the clerk of the court. Brown filed a notice of appeal to the district court, which affirmed the sentence in an order that was both rendered and entered in July. Brown then filed a notice of appeal to this court. This court entered a show cause order on August 11, and Brown responded by filing a supplemental transcript showing that the clerk of the county court had file stamped the county court's February sentencing order on August 17, after this court's show cause order.

This court concluded that when the district court reviewed the county court's action and rendered its order of affirmance, the district court was acting without jurisdiction, because the county court's sentencing order was not final under § 25-1301 until August 17, 2004, when the previously rendered order was entered by the clerk of the court. *State v. Brown, supra*. We concluded that when the district court entered its July order of affirmance, it had only potential jurisdiction which did not "spring" into existence until August 17—meaning that its July order was entered without jurisdiction. We ordered the district court to vacate its July order of affirmance. Because the district court lacked jurisdiction when it entered its July order of affirmance, that order was void and this court acquired no jurisdiction through the notice of appeal filed in the district court. Rather, the case was remanded for the district court to enter a

new order—the implication being that a new notice of appeal from a properly rendered and entered district court order would be required for this court to acquire jurisdiction.

### 3. APPLICATION TO CASE AT BAR

The case at bar, although in many ways comparable procedurally to *State v. Brown, supra*, differs from that case because of Rosen's attempts to cure the jurisdictional defect. As such, we discuss the springing jurisdiction problem in this case as it relates to the jurisdiction of the district court and as Rosen's cure of the jurisdictional defect relates to this court's jurisdiction.

### (a) District Court's Jurisdiction

When Rosen filed its notice of appeal in the county court on July 28, 2004, the district court did not acquire full jurisdiction. Because the county court's order had not been entered by the court clerk's placing a date and file stamp on the order, there was a jurisdictional defect and the district court acquired only potential jurisdiction, subject to § 25-1912. That jurisdiction did not "spring" into full jurisdiction until the defect was cured, which did not occur until the county court rendered and entered its order on August 17, 2005. Thus, when the district court entered its order of affirmance on March 9, 2005, the district court was acting without jurisdiction.

When a court lacks jurisdiction and nonetheless enters an order, such order is void. See, *Kovar v. Habrock*, 261 Neb. 337, 622 N.W.2d 688 (2001) (where district court lacked jurisdiction over action, further orders were null and void); *State v. Bracey*, 261 Neb. 14, 621 N.W.2d 106 (2001) (district court order void where court lacked jurisdiction); *Wells v. Goodyear Tire & Rubber Co.*, 14 Neb. App. 384, 707 N.W.2d 438 (2005) (order entered by court lacking subject matter jurisdiction was void). As such, the March 9, 2005, order of the district court affirming the county court's decision was void, and we vacate that order. See *State v. Bracey, supra*, and *Wells v. Goodyear Tire & Rubber Co., supra* (appellate court has power and duty to vacate void order). The district court was without jurisdiction to act until its potential jurisdiction "sprang" into full jurisdiction on August 17.

### (b) Court of Appeals' Jurisdiction

As we recognized in *State v. Brown*, 12 Neb. App. 940, 687 N.W.2d 203 (2004), when the district court acts as an intermediate appellate court and the jurisdictional defect occurs in the county court, simply curing the jurisdictional defect in the county court will not save the appeal in this court. Doing so only remedies the springing jurisdiction problem in the district court, but leaves this court without jurisdiction until the district court has rendered and entered a valid order and an appeal is taken from that order.

In the case at bar, Rosen cured the jurisdictional defect in the county court, allowing the district court's potential jurisdiction to spring into full jurisdiction. Unlike the defendant in *State v. Brown*, however, Rosen further attempted to save this appeal by moving for the district court to enter a new order recognizing its full jurisdiction. The district court rendered and entered an order on September 1, 2005. However, no notice of appeal was filed from that order.

We conclude that we lack jurisdiction to consider the merits of Rosen's appeal, because no notice of appeal was filed from the only valid order rendered and entered by the district court—the September 1, 2005, order of affirmance. The jurisdictional problem with Rosen's appeal to this court from the district court was not, and is not, a problem of springing jurisdiction remedied by Rosen's curing of the county court's defective order.

The jurisdictional problem with Rosen's appeal to the district court from the county court was a problem occasioned by Rosen's filing a notice of appeal before the county court's order had been both rendered and entered. Under § 25-1912 and our decision in *State v. Brown, supra*, Rosen created a potential and springing jurisdiction problem in the district court which could be, and was, remedied by curing the defect with the county court's order.

The jurisdictional problem with Rosen's appeal to this court from the district court, however, was a problem occasioned by Rosen's filing a notice of appeal from a void order. The problem with Rosen's appeal to this court was not that the notice of appeal was filed after the district court had announced a valid decision but before that decision was properly rendered or entered, but,

rather, the problem was that the district court's order was rendered and entered without jurisdiction and was thus void. As a result, Rosen's curing the jurisdictional defect with the county court's order, although providing the district court with jurisdiction to act, in no way made Rosen's notice of appeal to this court valid or effective, because it remained a notice of appeal from a void order.

When Rosen cured the defect with the county court's order by having the county court properly render a judgment and enter an order on August 17, 2005, Rosen's notice of appeal to the district court became effective and the district court acquired jurisdiction to act. No actions by the district court prior to August 17 could be valid, and any prior orders by the district court, including the March 9 order of affirmance, were void. Although the district court's September 1 order of affirmance is a validly rendered and entered order, no notice of appeal was filed from that order. As such, we conclude that we lack jurisdiction, because the only notice of appeal to this court was from a void order.

## V. CONCLUSION

It is well established that an appellate court has the power and the duty to determine whether it has jurisdiction. See *In re Interest of William G.*, 256 Neb. 788, 592 N.W.2d 499 (1999). It is also well established that the appellate courts in Nebraska engage in a practice of early examination of cases for jurisdictional defects. See *State v. Brown*, 12 Neb. App. 940, 687 N.W.2d 203 (2004). The appellate courts of Nebraska, as discussed earlier herein, have repeatedly attempted to emphasize the importance of proper rendition of judgments by trial judges and proper entry thereof by court clerks, as well as ensuring such by counsel and litigants. As we have repeatedly established, the straightforward requirements of § 25-1301 mandate that the trial court properly render a judgment by signing an order and that the clerk of the court properly enter a judgment by placing a date and file stamp on the order. As we noted in *State v. Brown*, 12 Neb. App. at 944, 687 N.W.2d at 207, "[t]he requirements for rendition and entry of judgments under § 25-1301 have been with us since August 28, 1999, and adherence to the requirements found therein should now be a matter of routine." Had these basic requirements

been complied with in the present case, the complicated jurisdictional morass that we have had to unravel would have been entirely avoided and the merits of Rosen's appeal would have been reviewable. Unfortunately, that was not done.

Despite Rosen's efforts to cure the defect in the county court's order and to cause the district court's potential jurisdiction to spring into full jurisdiction, Rosen failed to properly secure jurisdiction in this court. Because Rosen failed to file a notice of appeal from a properly rendered and entered order of the district court, we are without jurisdiction and are compelled to dismiss the appeal. The district court's March 9, 2005, order of affirmance, being a void order, is vacated.

APPEAL DISMISSED.